ASSOCIATED MILLS, INC., Plaintiff-Appellee, *v.* DRAKE HOTEL, INC., Defendant-Appellant.

(No. 58902; ▮▮▮▮▮▮▮▮▮▮▮

First District (2nd Division)—August 5, 1975.

Clausen, Hirsh, Miller & Gorman, of Chicago (Frank L. Schneider and James T. Ferrini, of counsel), for appellant.

Arvey, Hodes, Costello & Burman, of Chicago (David L. Passman and Phillip M. Heller, of counsel), for appellee.

Mr. JUSTICE HAYES delivered the opinion of the court:

The present action, sounding in negligence, was brought on 1 March 1972 by Associated Mills, Inc. (hereinafter plaintiff), against Drake Hotel, Inc. (hereinafter defendant), to recover damages allegedly sustained when a certain prototype working model manufactured by plaintiff, and the only such model then in existence, disappeared overnight from a conference room in defendant's Drake Oakbrook Hotel. Plaintiff's complaint alleges the following: On or about 12 and 13 June 1970, plaintiff held business meetings of its personnel at the Drake Oakbrook Hotel and exhibited to them the only existing working model of the Pollenex Orbital Massager, a product manufactured by plaintiff. At the conclusion of the meetings of 12 June 1970, the model was located in Conference Room 2 of the hotel. In order to prevent overnight entry into the room and removal of property left in the room overnight, plaintiff requested that the management of the hotel plug and seal the room overnight and order its hotel personnel not to enter and clean the room during the night; management stated that it would do so. On the morning of 13 June 1970, plaintiff discovered that the room was not and had not been plugged, sealed, or locked; that it had been cleaned; and that the model was missing. The complaint alleges further that plaintiff is free from contributory negligence in the loss of the model, and that plaintiff has suffered damages in the sum of $87,122.80 plus interest from 13 June 1970 and costs of legal proceedings. Of this sum, $4,946.27 is compensation for the original cost of developing and manufacturing the model. The remaining amount is compensation for consequential damages resulting from subsequent increased costs of manufacturing the product without the model, loss of sales because of an inability to fill orders that had been placed by those who saw the model before it was lost, and loss of sales that were expected to be made at a future convention but which were not made because of the lack of the demonstration model.

On 23 May 1972, defendant filed a motion to dismiss plaintiff's complaint or, in the alternative, to strike so much of said complaint as demanded judgment for an amount in excess of $250. Defendant's motion as to the damage clause in plaintiff's complaint was based on certain provisions of "An Act for the protection of inn keepers" (Ill. Rev. Stat. 1969, ch. 71, par. 1 *et seq.*); more specifically, the motion was based on the contention that, since plaintiff had not given written notice of the bringing of a merchandise sample into the hotel nor had plaintiff received from defendant written acknowledgment of the receipt of such notice, all as provided by section 3.1 of the Innkeepers Act (Ill. Rev. Stat. 1969, ch. 71, par. 3.1), defendant, according to the terms of that statutory section, was not liable in any amount for plaintiff's loss, despite defendant's

fault or negligence; or, alternatively, if proper written notice had been given and proper written acknowledgment of receipt of notice had been received, the section limits defendant's maximum liability to $250 regardless of whether the loss was occasioned by theft or by the fault or negligence of the hotel, absent a separate written contract to assume a greater liability. On 24 October 1972, the court denied defendant's motion on the ground that section 3 of the Act (Ill. Rev. Stat. 1969, ch. 71, par. 3) was applicable to this case, rather than section 3.1, because the prototype working model was neither a merchandise sample nor merchandise for sale. On 10 November 1972, defendant moved for a rehearing on his earlier motion or, in the alternative, for a reduction of the *ad damnum* clause of the complaint to the sum of $250 or $75, pursuant to the maximum limitation of liability expressed in section 3. With respect to defendant's alternative motion, plaintiff advanced two contentions:

1) Properly construed, the provisions of section 3 limiting defendant's maximum liability are inapplicable for failure of defendant to comply with alleged express statutory conditions precedent to their applicability;

2) Even if the provisions of section 3 limiting defendant's maximum liability were applicable, defendant by its conduct in this case has either waived the protection of the said provisions or has estopped itself from claiming the said protection.

Defendant's alternative motions were denied on 29 January 1973.

On 5 April 1973 the court reaffirmed its orders of 24 October 1972 and 29 January 1973 for the purpose of permitting an interlocutory appeal pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1969, ch. 110A, par. 308). The court certified that the question of the application and enforceability of sections 3 or 3.1 of the Innkeepers Act to the factual situation disclosed by plaintiff's complaint, involved a question of law as to which there is a substantial ground for difference of opinion and that an interlocutory appeal may materially advance the ultimate determination of the litigation, in that it will determine whether the defendant is exposed to liability in the amount of $87,122.80, as contended by plaintiff, or $250 or some lesser sum, as contended by defendant. We then granted defendant leave to file this appeal.

As heretofore noted, the statute involved is entitled "An Act for the protection of inn keepers." In section 1, provision is made for various types of valuable property and personal effects of small compass belonging to, or brought into a hotel by, guests of that hotel. This section provides certain limitations on the liability of an innkeeper for the articles covered by the section, where various conditions are met, and provides for additional liability where the proprietor or manager of a hotel has entered

into a special agreement in writing with the guest agreeing to assume the said additional liability. Plaintiff and defendant agree that the nature of the lost article in this case does not fall within the type of property covered by section 1.

Section 3 and section 3.1 purport to cover all other types of property brought into a hotel and not covered by section 1. Hence, if any section of the Act is applicable to the instant facts, it must be one or the other of these two sections.

Section 3.1 provides as follows:

"No hotel or the proprietor or manager thereof is liable for the loss of or damage to any merchandise samples or merchandise for sale brought into a hotel by a guest or other owner thereof, regardless of whether such loss or damage is occasioned by theft, the fault or negligence of such proprietor or manager or his agents or employees, or otherwise, unless the guest or other owner has given written notice of the bringing of such merchandise into the hotel and of the value thereof, and the receipt of such notice has been acknowledged in writing by the proprietor or manager prior to or at the time such merchandise is brought into the hotel by such guest or other owner. Where such notice is given and acknowledged as provided in this Section, neither the hotel nor the proprietor nor manager thereof is liable for loss of or damage to any such merchandise samples or merchandise for sale in any sum exceeding $250, regardless of whether such loss or damage is occasioned by theft, the fault or negligence of such proprietor or manager or his agents or employees, or otherwise, unless the manager or proprietor or such hotel has contracted by a separate agreement in writing to assume a greater liability."

Section 3 provides as follows:

"As to any and all property and effects not provided for in Section 1 of this Act, other than merchandise samples or merchandise for sale, brought into a hotel by any guest thereof, the liability of such hotel or the proprietor or manager thereof for any and all loss thereof or damage thereto is limited to such loss or damage as may result from the fault or negligence of such proprietor or manager or of his agents or employees, but in no event is such hotel, the proprietor or manager thereof, liable for loss or damage in an amount exceeding $250; provided, that where such property and other effects of the type covered by this section are delivered to the proprietor or manager of such hotel, or to his servants or agents, for safekeeping, and the guest receives a check or receipt therefor, such hotel or the proprietor or manager thereof is not liable for

any loss or damage to such property and effects in excess of the following amounts respectively:

Trunks and contents.................................... $250

Valises and traveling cases and contents.................. $ 75

Boxes, parcels and packages and contents............... $ 25

All other miscellaneous property and effects,
including wearing apparel and personal
belongings and any contents thereof................... $ 75

The respective limitations on liability provided for in this section apply regardless of whether any such loss or damage in an amount in excess thereof is occasioned by theft, the fault or negligence of such proprietor or manager or his agents or employees, or otherwise, unless such proprietor or manager has contracted in writing to assume greater liability. * * *"

The issues on appeal are three:

1) Is the prototype working model a "merchandise sample" within the meaning of sec. 3.1?

2) If the prototype working model is not a "merchandise sample" so that sec. 3 rather than sec. 3.1 covers the working model, then is the language in the first sentence of sec. 3 beginning, after the first semicolon, with the words "provided, that" properly construable as creating conditions precedent to the provisions in sec. 3 limiting maximum liability?

3) As to either sec. 3 or sec. 3.1, does the conduct of defendant in the instant case constitute a waiver of the protection afforded by the provisions limiting maximum liability or estop defendant from claiming the said protection.

■■ We deal first with plaintiff's second issue: the proper construction of section 3. Put bluntly, plaintiff's contention is that section 3 is inapplicable to limit the dollar amount of defendant's liability unless the property of the described type has been delivered to the hotel for safekeeping and the guest has received a check or receipt therefor. But plaintiff's construction of section 3 is plainly erroneous; it ignores the first clause of the first sentence of the section as well as the next following sentence of the section. The first clause of the first sentence is independent of the subsequent proviso. It imposes liability for loss of property, other than property covered by section 1 and section 3.1, brought into a hotel by a guest, only if the loss is the result of the fault or negligence of the hotel proprietor or manager or of his agents or employees; it then limits that liability to no more than $250 in any event. The next following sentence makes each respective limitation of liability afforded by the section applicable even when a loss in excess of the limited amount is due to

theft or to the fault or negligence of such proprietor or manager or of his agents or employees, absent a written contract to assume greater liability. What the proviso does is to limit the dollar amount of liability of the hotel when there has been an express bailment of the described types of property for safekeeping and the guest has received a check or receipt therefor. Under such circumstances, the proviso, in respect of most of the described types of property, operates further to delimit the generality of the $250 limitation of liability afforded by the first clause of the sentence (see for example *People ex rel. Roos v. Kaul* (1922), 302 Ill. 317, 323, 134 N.E. 740) and leaves open the question as to whether such further delimited liability requires that the subsequent loss of, or damage to, the bailed property must constitute a negligent breach of bailment. Hence, the section as a whole generically limits the amount of liability, bailment or no bailment, and regardless of whether the loss is by theft or by the fault or negligence of the hotelkeeper or his agents or his employees. Therefore, the existence of a bailment and the receiving of a check or receipt therefore are not conditions precedent to *every* limitation of amount of liability extended to the hotelkeeper by section 3.

The third issue raised by plaintiff on appeal is that defendant's conduct constituted a waiver of the limitation on dollar amount of liability afforded by section 3 (or, for that matter, by section 3.1) or in some way estopped defendant from availing himself of the statutory protection. The conduct referred to consisted of defendant's oral undertaking to plug and seal the conference room overnight and to order its personnel not to enter and clean the room during the night.

We note first that plaintiff has not alleged that defendant knew the extraordinary value of plaintiff's working model or knew that it was the only working model which plaintiff had or knew the extraordinary extent of the consequential damages which plaintiff would incur by reason of its loss. We note further that defendant's oral undertaking did not comstitute and express undertaking to assume a greater dollar liability for the loss of the working model (whether by theft or by its own fault or negligence) than the limited maximum dollar liability provided by section 3 or by section 3.1 of the statute.

■■ We have reviewed all the provisions of the Act for the protection of innkeepers which place a maximum limitation on the dollar amount of an innkeeper's liability (Ill. Rev. Stat. 1969, ch. 71, pars. 1, 3, 3.1, 3.2, and 4). These provisions, when read together, disclose a consistent legislative intent to limit the dollar amount of an innkeeper's liability for loss of, or damage to, all types of property brought within the scope of the innkeeper-guest relationship. The limitation of the dollar amount of liability is consistently extended to an innkeeper even when the loss of,

or damage to, such property is the result of theft or of the fault or negligence of the proprietor or manager or of his agents or employees "or otherwise." The legislative intent to protect the innkeeper *in any event* as to the maximum dollar amount of liability for such property is comprehensive and all-inclusive.

In every situation, the statute provides only one means by which the innkeeper can incur a greater dollar liability: he must assume that greater dollar liability by a written agreement to do so. We think the legislative intent to make the express written contract the exclusive means by which the innkeeper can incur a greater dollar liability for such property is clear. In *Koch v. Block Corp.* (5th Cir. 1970), 423 F.2d 700, the Federal Court of Appeals placed a similar construction on a comparable section of the Georgia Innkeepers' statute (Ga. Code Ann. § 52—110.1 (1974).) It follows that the oral undertaking of defendant in this case (which is not even an express oral undertaking to assume a greater dollar liability) was not intended by the legislature to be a means by which an innkeeper would incur a greater dollar liability for property brought within the innkeeper-guest relationship than the maximum dollar limitation imposed by the statute.

Defendant's oral undertaking as such did not even purport to be a waiver of the statutory protection, and in any event, we think an effective waiver would have to be accomplished by means of a written agreement to that effect. While we need not and do not hold that no conceivable conduct by an innkeeper, other than entering into a written agreement to assume a greater liability, could operate to estop the innkeeper from relying on the protection of the statute,[1] we do hold that defendant's oral

---

[1] For example, in *Garner v. Margery Lane, Inc.* (Fla. 1970), 242 So.2d 776, the Florida Appellate Court was dealing with a section of the Florida statutory provisions for the protection of innkeepers (F.S. 509.111). That section protected an innkeeper from any liability whatever for the loss of any monies, securities, jewelry, or precious stones, unless the guest made a special deposit of such property with the innkeeper and received from the innkeeper a written receipt therefor, which receipt set forth the value of the property. The defendant innkeeper had prepared a form of receipt which did not include any space for, or any reference to, setting forth the value of the deposited property. As a result, the plaintiff had not set forth the value of his deposited property when he had accomplished the form provided to him by the defendant. The defendant had accepted the special deposit and had validated the form presented by the plaintiff without making any reference to the valuation requirement. The plaintiff's property was subsequently stolen from the hotel's safety deposit boxes. The court held that the defendant had waived compliance by the plaintiff with the valuation requirement and was estopped to urge plaintiff's noncompliance as a statutory defense to liability.

In the instant case, plaintiff has cited *Garner* in support of plaintiff's third contention on this appeal. But *Garner* is distinguishable on its facts from the instant case. In *Garner*, the defendant's conduct was conduct directly related to the statutory exception imposing liability and, under the circumstances, the defendant's conduct

undertaking in this case did not operate to estop defendant from invoking the protection of the statute because the legislature clearly did not intend such conduct so to operate.

■■ The remaining issue presented by plaintiff on this appeal is which section of our statute is applicable to the instant case: Section 3.1 or section 3. We have held herein that the construction of section 3 which plaintiff sought on this appeal and which would have deprived defendant of the protection afforded by that section is erroneous, so that the section, if applicable, will limit the dollar amount of defendant's liability. We have also held herein that defendant's conduct (namely, its oral undertaking to plug and seal the conference room overnight and to order its personnel not to enter and clear the room during the night) did not constitute a waiver of the protection afforded to defendant under section 3 or section 3.1 and did not estop defendant from invoking the said protection. It follows that, no matter which section is applicable, defendant's maximum dollar liability will not exceed $250.

The resolution of plaintiff's remaining issue requires us to decide whether plaintiff's prototype working model was a "merchandise sample" within the meaning of section 3.1. If it was not, then section 3 is the applicable section. The issue is the construction of the noun "sample" in section 3.1.

Plaintiff contends that a sample is a representative unit of a group of similar units; since the unit involved here was the only unit of its kind, so that no group of similar units existed, the unit is not a sample. Webster's Third New International Dictionary (1961) relevantly defines the noun "sample" as follows: "* * * 2a: a representative portion of a whole; a small segment or quantity taken as evidence of the quality or character of the entire group or lot; * * *." It also defines the adjective "sample" as "exemplifying a whole body or lot." These definitions support plaintiff's contention.

Defendant contends that the noun "sample" is appropriately applied to any single unit which is used for purposes of demonstration, regardless of whether or not a group of similar units exist. Webster's Third New International Dictionary also relevantly defines the noun "sample" as follows: "* * * 2c(2): a unit of merchandise used for demonstration or display; * * *." It also defines the adjective "sample" as "serving as an illustration or example." These definitions support defendant's contention.

served to mislead the plaintiff into noncompliance with the statutory requirement that the value of the property be stated. In the instant case, there was no comparable conduct by defendant. Two other cases also cited by plaintiff herein in support of his third contention on this appeal are equally distinguishable on their facts from the instant case.

We note that section 3.1 deals exclusively with "any merchandise samples or merchandise for sale brought into a hotel by a guest or other owner thereof * * *." We note further that section 3 deals with "any and all property and effects not provided for in Section 1 of this Act, other than merchandise samples or merchandise for sale, brought into a hotel by any guest thereof * * *." In further describing such property and effects as may happen to be bailed to the hotel for safekeeping, the section refers to "trunks and contents" "valises and traveling cases and contents," "boxes, parcels and packages and contents," "all other miscellaneous property and effects, including wearing apparel and personal belongings and any contents thereof."

The types of "property and effects" covered by section 3 are personal travel containers and their contents, wearing apparel and personal belongings and their contents, and the like. We conclude that section 3 is designed to cover personal effects, not commercial property. On the other hand, section 3.1 is clearly designed to cover commercial property. Since plaintiff's prototype working model was obviously a piece of commercial property and since the noun "sample" has one definition which fits the model (the definition for which defendant contends), we hold that the applicable section is section 3.1.

For the foregoing reasons, we reverse: (1) the order of the trial court of 24 October 1972, holding that the applicable section was section 3; (2) the order of the trial court of 29 January 1973 denying defendant's alternative motions filed on 10 November 1972; and (3) the order of the trial court of 5 April 1973 reaffirming its said two prior orders; and we remand the cause to the trial court for such further proceedings as are not inconsistent with this opinion.

Reversed and remanded.

STAMOS and LEIGHTON, JJ., concur.