**Valentin D. OCHOA, Plaintiff–Appellant,**

v.

**INTERBREW AMERICA, INC.,
Defendant–Appellee.**

**No. 851, Docket 92–7953.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 22, 1993.

Decided July 20, 1993.

Joseph E. Gasperetti, New York City (Shannon P. O'Neill, Coleman & Rhine, of counsel), for plaintiff-appellant.

James E. Brandt, New York City (Stanley A. Walton, III, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, of counsel), for defendant-appellee.

Before: PIERCE, WALKER and McLAUGHLIN, Circuit Judges.

PIERCE, Circuit Judge:

Valentin D. Ochoa appeals from a judgment of the United States District Court for the Southern District of New York (Mary Johnson Lowe, *Judge* ), dismissing his diversity suit for lack of subject matter jurisdiction. We reverse and remand because, on the present record, based upon our reading of Texas law it does appear that the jurisdictional amount was satisfied.

## BACKGROUND

On July 1, 1991, plaintiff-appellant Valentin D. Ochoa ("Ochoa") filed a complaint in the United States District Court for the Southern District of New York against defendant-appellee Interbrew America, Inc. ("Interbrew"). The complaint invoked diversity jurisdiction, 28 U.S.C. § 1332, and alleged that "the amount in controversy, exclusive of interest and costs, exceeds $50,000." According to the complaint, Ochoa is a natural person and a resident of the State of New York, who is engaged in the business of providing consulting services concerning the import and export of goods to and from the United States. Interbrew is a corporation organized under the laws of a state other than New York, having its principal place of business in Dallas, Texas. Interbrew is a wholly-owned subsidiary of Interbrew, S.A., a foreign corporation organized under the laws of Belgium, which is in the brewery business.

Asserting two claims for relief, the complaint alleged that on June 4, 1990, Ochoa and Interbrew entered into a written contract, which was drafted by Interbrew. Ochoa alleged that he had satisfied all obligations imposed upon him pursuant to the contract, but that Interbrew had breached the contract in refusing to pay him $4,000 per month as provided therein, and in refusing to reimburse him for his reasonable business expenses, which amounted to $14,380.57, despite due demand for each. In his first claim for relief, Ochoa sought damages of $62,380.57, plus interest from June 30, 1990. In his second claim for relief, Ochoa sought $20,000, as the fair and reasonable value of services he performed from June 1990 through August 1990, plus reimbursement of $14,380.57 for reasonable business expenses, for a total of $34,380.57, plus interest from June 30, 1990.

Attached to the complaint was a copy of the June 1990 contract. Paragraphs Three through Five of the contract provide:

3. The term of this Agreement shall be for a period of twelve (12) month [sic] commencing on the 1st day of June 1990, unless sooner terminated as later provided. At its termination date, the present agreement will be automatically null and void.

4. For the services to be rendered by you as consultant, [Interbrew] hereby agrees to pay consultant the sum of four thousand Dollars ($4,000) per month, during the term of this agreement. Consultant's fee shall be due and payable on the last day of each consecutive month commencing June 30, 1990. Notwithstanding paragraph 5 herein, each compensation includes all taxes, other costs and expenses consultant could incur.

5. [Interbrew] shall reimburse consultant for his reasonable business expenses, as prior approved in writing by [Interbrew], incurred in performing his duties pursuant to this Agreement. Reimbursable expenses shall include, but not necessarily be limited to, reimbursement for travel expenses, including air fare, meals, lodging and transportation. Reimbursement of priorly approved expenses will be made upon presentation of the related invoices.

The contract states that it shall be construed and enforced according to the laws of the State of Texas.

In its answer, Interbrew denied liability and asserted a counterclaim for $5,000 allegedly wrongly paid to Ochoa. At a pre-trial conference, the district judge raised the issue of whether the jurisdictional amount of $50,000 had been satisfied, since the contract at issue might be read as terminable at will by either party. Under such an interpretation, Ochoa's damages would not be in excess of the jurisdictional amount of $50,000 since he was terminated after four months of service and would be entitled to, at most, approximately $31,000. Ochoa was directed to file a brief on the issue by November 25, 1991, and Interbrew to file a response by December 30, 1991.

In his brief, Ochoa argued that under Texas law, the contract should be read as having a one-year term. Under that interpretation, he would be entitled to money damages of $48,000, plus reimbursement for his reasonable business expenses of $14,380.57, for a total award of $62,380.57. Interbrew filed its

brief timely, as directed, arguing that the contract was terminable at will and that a reasonable method of termination was to be utilized.

In an opinion dated July 22, 1992, relying upon the complaint and upon Interbrew's brief, the district court observed that Interbrew gave notice to Ochoa of his termination, and thereafter unilaterally terminated his employment after four months and that Interbrew had made no payments to Ochoa. The district court then noted that, for it to conclude that it had no jurisdiction over the case, it had to find, based upon the complaint, that it appeared to a legal certainty that Ochoa could not recover sufficient damages to invoke federal jurisdiction, and that this determination required a resolution of whether the contract was, as a matter of law, terminable at will. The court disagreed with Ochoa's contention that the contract was ambiguous, and stated that, under the contract, Ochoa was to be hired for not longer than one year, but that the contract could be terminated earlier. Instead of being found ambiguous, the contract was found to be lacking, "in that it fails to 'provide later' the manner in which the contract may be terminated." The court stated that, under *Maxwell v. Lake*, 674 S.W.2d 795 (Tex.Ct.App.Dallas [5th Dist.] 1984, no writ), if an unambiguous written contract is silent on a certain matter, the court must determine the legal effect of the writing, and, thus, the district court reasoned that though there was no specific method of termination provided for in the contract, a reasonable method of termination was required. It then found that the method of termination employed by Interbrew was reasonable and concluded therefore that the district court lacked subject matter jurisdiction because, under the contract, Ochoa could recover no more than $31,000, since he was terminated after only four months of service. A judgment dismissing the complaint for lack of subject matter jurisdiction was entered. This appeal followed.

## DISCUSSION

On appeal, Ochoa claims that the district court erred in concluding to a legal certainty

that he could recover no more than $31,000 ($16,000 for four months at $4,000 per month, plus incurred business expenses of $14,380.57). He contends that the contract is ambiguous, because it stated both that it was for a term of twelve months and that it was terminable as later provided. According to Ochoa, since the contract made no provision for termination, under Texas law, the parties are entitled to adduce evidence as to the meaning of the missing provision. He argues that the "words 'as later provided' need not, and indeed should not, be read as referring solely to the means or manner of notifying a party signatory that the agreement is being terminated." Ochoa claims that nothing in the text of the contract warrants the district court's reading and "[t]hese words could just as readily refer to the reasons justifying termination by either party" and that "[o]nly imagination limits the possible interpretations and only the facts will give meaning, if any there is, to this missing provision."

Under 28 U.S.C. § 1332 (1988), federal district courts have jurisdiction over civil diversity actions "where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs...." In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the Supreme Court stated:

The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that

amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*Id.* at 288–89, 58 S.Ct. at 590 (footnotes omitted). In *Deutsch v. Hewes St. Realty Corp.*, 359 F.2d 96 (2d Cir.1966), this Court noted that *Red Cab Co.*'s good faith test was but a "linguistic variant" of the legal certainty standard also mentioned in that case. *Id.* at 99; *see also* Charles A. Wright, The Law of Federal Courts 184 (4th ed. 1983) ("[U]nless it appears to a legal certainty that plaintiff cannot recover the sum for which he prays, how can it be held that his claim for that sum is not in good faith?").

■ We note two concerns with the district court's approach to this case. First, under Texas law—the law under which the subject contract is to be interpreted—in a suit for breach of an employment contract, an employee is entitled to recover as damages: the present cash value of the contract, as if it had not been breached and any future amounts of salary, discounted to present value, less amounts earned in mitigation of damages. *See Greater Fort Worth & Tarrant County Community Action Agency v. Mims*, 627 S.W.2d 149, 151 (Tex.1982); *Sheshunoff & Co. v. Scholl*, 564 S.W.2d 697, 698 (Tex. 1978) (per curiam). Interbrew does not contend that Ochoa's claim for damages of $62,-380.57 for the entire contract was not made in good faith. Thus, as Ochoa argued before the district court, if the contract was for a one-year term, disregarding for the time being any defenses asserted by Interbrew, he would be entitled to $62,380.57, plus interest—the sum claimed in the first cause of action in his complaint. Because, in determining whether a challenged jurisdictional amount has been met, district courts are permitted only to assess the allegations in a complaint and not the validity of any asserted defenses, *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir.1982), it cannot be said in this case, using the language of *Red Cab Co.*, that "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or ... that the plaintiff never was entitled to recover that amount...."

Second, the district court concluded that, although there was no specific method of termination provided for in the contract it was to be construed to require a reasonable method of termination—this conclusion does not appear to correctly reflect Texas law. Texas courts appear to strictly construe termination provisions in employment contracts. *See Computerose, Inc. v. Minor*, 692 S.W.2d 744, 747 (Tex.Ct.App. Fort Worth 1985); *Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536, 538–39 (Tex.Ct.App. Corpus Christi 1982, no writ). Paragraph Three of the subject contract states, in part: "The term of this Agreement shall be for a period of twelve (12) month [sic] commencing on the 1st day of June 1990, unless sooner terminated as later provided." This sentence suggests that the parties agreed to a one-year contractual period but they contemplated the possibility that the employment relationship could be terminated prior to the expiration of that period, as per a later provision in the contract. *See Lee–Wright, Inc. v. Hall*, 840 S.W.2d 572, 577–78 (Tex.Ct.App. Houston [1st Dist.] 1992). However, the contract contains no provision concerning termination. In this respect, the contract is incomplete. *See* E. Allan Farnsworth, Contracts 7 7.17 at 555–56 (2d ed. 1990); John D. Calamari and Joseph M. Perillo, The Law of Contracts 182 (3d ed. 1987). The parties simply neglected to address the matter of earlier termination.

Interbrew claims that the "only construction under Texas law of the term 'unless sooner terminated as later provided' which gives meaning to every clause of the Consulting Contract is that it means the *method* of termination...." It asserts, "the district court correctly applied the fundamental principles of Texas contract law in this action" and properly relied upon *Maxwell*. *Maxwell* addressed the method of exercising an option, when there was no provision in the contract concerning the optionee's exercise of the option. *Maxwell* held that where an unambiguous contract is silent regarding the method of exercising such an option, in accordance with traditional concepts of contract law, giving timely notice to the optionor and tendering performance within a reasonable time thereafter was sufficient. *Maxwell*, 674 S.W.2d at 798, 802. The district court con-

cluded that, although the contract herein was silent as to an actual termination provision, under *Maxwell,* reasonable notice of such termination was all that was required.

We disagree with the district court's conclusion. Accepting its interpretation would, in effect, change the phrase in question to read: "unless sooner terminated in a reasonable manner." If we were convinced that the missing provision concerned only "how" (or the method or time by which) Ochoa could be terminated, we might be persuaded that the *Maxwell* analysis was proper and conclude that "reasonable notice" by Interbrew of its intention to terminate Ochoa would have been sufficient. But, it is equally possible that the missing provision was expected to outline, for instance, the "why" (or the cause for which) Ochoa could be dismissed. Unlike the district court, we are not convinced that the *only* interpretation the missing provision may have under Texas contract law, which would give meaning to all of the clauses in the contract, is that the *method* of termination employed be undertaken in a reasonable manner.

■ The district court not only credited Interbrew's contention that the contract was terminable at will as a matter of law, but, in doing so, and without the benefit of a factual basis, it supplied a missing term to the contract. This was contrary to general Texas law. *Dempsey v. King,* 662 S.W.2d 725, 728 (Tex.Ct.App. Austin 1983) ("Courts are without authority to supply the missing terms of a contract which the parties themselves had either not seen fit to place in their agreement, or which they omitted to agree upon."). The district court's action was also impermissible because in considering challenges to the jurisdictional amount when there is no claim of bad faith in asserting the jurisdictional amount, courts are permitted only to assess the allegations in the plaintiff's complaint and are to refrain from adjudicating the merits of the case. *See Zacharia,* 684 F.2d at 202. Accordingly, it was error for the district court to conclude that Ochoa's claim was for less than the jurisdictional amount because it does not appear to a legal certainty that the contract was terminable at will, and conse-

quently that the amount in controversy was not in excess of $50,000.

## CONCLUSION

The district court's judgment is reversed and the matter is remanded for further proceedings.